## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT
## AND ARREST WARRANT

I, Javier A. Gonzalez, being first duly sworn, hereby depose and state as follows:

### PURPOSE OF AFFIDAVIT

1.     This Affidavit is submitted in support of a Criminal Complaint charging Chad Barrett JONES (hereinafter "JONES") with violations of 18 U.S.C. §§ 111(a) and (b), 18 U.S.C. § 231(a)(3), 18 U.S.C. § 1361, 18 U.S.C. § 1512(c)(2), 18 U.S.C. §§ 1752(a)(1)-(4) and (b)(1), and 40 U.S.C. §§ 5104(e)(2)(D) and (F).  Specifically, on January 6, 2021, JONES was present in Washington, D.C., and knowingly and willfully joined a crowd of individuals who unlawfully entered the U.S. Capitol and impeded, disrupted, and disturbed the orderly conduct of business by the United States House of Representatives and the United States Senate.

### BACKGROUND OF AFFIANT

2.     I have been a Special Agent with the Federal Bureau of Investigation ("FBI") since 2003.  I am currently assigned to a squad for the Washington Field Office that investigates criminal enterprises and I am assisting in the investigation and prosecution of events that occurred at the United States Capitol on January 6, 2021.  During my FBI career, I have participated in numerous investigations of criminal activity, including violations related to securities fraud, bank fraud, corporate fraud, mail fraud, wire fraud, conspiracy, money laundering, and violent crimes.  As a Special Agent, I am authorized by law or by a Government agency to engage in or supervise the prevention, detention, investigation, or prosecution of a violation of Federal criminal laws.

3.     Unless otherwise stated, the information in this Affidavit is either personally known to me, has been provided to me by other individuals, or is based on a review of various documents, records, and reports.  Because this Affidavit is submitted for the limited purpose of establishing

1

probable cause to support an application for an arrest warrant, it does not contain every fact known by me or the United States. The dates listed in this Affidavit should be read as "on or about" dates.

## STATEMENT OF FACTS SUPPORTING PROBABLE CAUSE

4. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol.

5. On January 6, 2021, the exterior plaza of the U.S. Capitol was closed to members of the public.

6. On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

7. As the proceedings continued in both the House and the Senate and with Vice President Mike Pence presiding, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol Building, and U.S. Capitol police were present and attempting to keep the crowd away from the Capitol buildings and the proceedings underway inside.

8. At such time, the certification proceedings still underway and the exterior doors and

windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

9. Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

10. During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of scores of individuals inside the United States Capitol building without authority to be there, in violation of Federal laws.

11. Following this incident, I reviewed video footage, including footage published by the Washington Post and on YouTube depicting the shooting of a woman who news outlets have identified as Ashli Babbitt, a former United States Air Force member. The shooting occurred inside the United States Capitol building by an entrance to the Speaker's Lobby. The Speaker's Lobby is a hallway that connects to the House of Representatives chambers.

12. The video footage shows a large, aggressive crowd trying to breach a barricaded door to the Speaker's Lobby being guarded by three Capitol Police officers in front. The words

"Speaker's Lobby" are visible at the top of the doors. Chairs are among the items visible through the door's glass panels as being used to barricade the door from the inside of the Speaker's Lobby.

13. Approximately three minutes before Babbitt's shooting, apparent lawmakers and officials can be seen yards away through the door's glass panels, standing in the Speaker's Lobby as they were being evacuated. One man is seen repeatedly punching the glass panels immediately behind the officers, causing the glass to splinter. Members of the crowd are shouting and gesticulating at the officers. Someone can be heard shouting "Fuck the blue" multiple times. Another voice is heard telling the officers that the crowd is going to push its way to where they were and that the officers should leave because he saw people getting hurt outside and he did not want to see the officers get hurt. The three officers then appear to move to the adjacent wall as colleagues in tactical gear arrived behind the rioters.

14. Seconds after the officers begin moving away from the doorway, a man wearing a red hooded jacket and a gray skullcap starts striking the door's glass panels with what appears to be a long, wood flagpole. Chants can be heard of "Break it down!" and "Let's fucking go!" The man forcefully strikes the door at least 10 times, further damaging the glass panels, and then attempts to open the door by pulling on it with his left hand. An officer inside the Speaker's Lobby, facing the door with a gun raised, can be seen at the side of the video in the close vicinity of the doorway. When Babbitt is shot, the man in the red hooded jacket and gray skullcap is still next to the door holding the pole. He appears in several stillshots to be a white male with facial

hair.  Still images from the video are produced below.













15.     On January 8, 2021, W-1 submitted a tip to the FBI National Threat Operation Center. W-1 reported that the man "wearing a red hooded jacket and gray sock cap" who was "using a rolled up Trump flag to attempt to break the glass on an interior door … to the left of Ashli Babbit[t]" was "a family member" whom he had talked to the night of the incident.

16.     On January 8, 12, and 14, 2021, FBI agents interviewed W-1. During the interviews, W-1 provided the following information.

17. W-1 identified the man in the red jacket and gray cap as his family member CHAD JONES of Mount Washington, KY. W-1 stated that he was watching the national news coverage of the events when he observed JONES using a pole to breach the doors inside the United States Capitol. W-1 stated that JONES later told W-1 that JONES had been using a rolled up "Trump flag."

18. W-1 stated that he believes JONES drove to the Washington, D.C. protests by himself. W-1 also saw on Facebook that Jones was going to the United States Capitol. W-1 advised that JONES had been to a previous Trump rally in Washington D.C.

19. W-1 said he contacted JONES regarding what W-1 saw on the news and told JONES that JONES needed to contact the FBI or an attorney. JONES wanted to explain to W-2 "why it all was happening and why it was a hoax."

20. W-1 told the agents that W-1 discussed JONES' involvement in the events at the United States Capitol with W-2, JONES' close friend.

21. On January 11, 2021, the FBI interviewed W-2, who provided the following information.

22. W-2 self-identified as a friend of JONES. W-2 indicated he saw footage of the United States Capitol incident on the Internet and recognized JONES in some of the videos wearing a red jacket and a gray toboggan cap. W-2 further advised that he also observed JONES break a window inside the Capitol. W-2 stated that JONES was standing close to the retired United States Air Force woman who was shot inside the Capitol, referring to Ashli Babbitt.

23. W-2 stated that JONES called him on Thursday, January 7, 2021, and said that JONES was in trouble. JONES also admitted to W-2 that he broke a window and JONES called himself an idiot. JONES also told W-2 that JONES had been in the middle of the crowd and was able to walk into the United States Capitol without any problem.

**CONCLUSIONS OF AFFIANT**

24. Based on the foregoing, your affiant submits that there is probable cause to believe that JONES violated:

   a. 18 U.S.C. §§ 111(a) and (b), which make it a crime to forcibly assault, resist, oppose, impede, intimidate, or interfere with any person designated in [18 U.S.C. § 1114] while engaged in or on account of the performance of official duties; and punish the commission of such acts using a deadly or dangerous weapon. Pursuant to 18 U.S.C. § 1114, officers of the U.S. Capitol Police are "officers and employees of the United States or of any agency in any branch of the United States government."

   b. 18 U.S.C. § 231(a)(3), which makes it a crime to commit or attempt to commit any act to obstruct, impede, or interfere with any law enforcement officer engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function. Under 18 U.S.C. § 232(1), "civil disorder" means any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual.

   c. 18 U.S.C. § 1361, which makes it a crime to willfully injure or commit any depredation against government property, or attempt to do so. The window in the United States Capitol that JONES broke is property of the United States government. The Superintendent of the United States Capitol Building has represented that the repair cost will exceed $1,000.

d. 18 U.S.C. § 1512(c)(2), which makes it a crime to obstruct, influence, or impede any official proceeding, or attempt to do so. Under 18 U.S.C. § 1515, congressional proceedings are official proceedings.

e. 18 U.S.C. §§ 1752(a) and (b), which make it a crime to (1) knowingly enter or remain in any restricted building or grounds without lawful authority to do so, (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engage in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions, (3) knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions, obstruct or impede ingress or egress to or from any restricted building or grounds, or (4) knowingly engage in any act of physical violence against any person or property in any restricted building or grounds; or attempts or conspires to do so; and punish the commission of such acts if the person, during and in relation to the offense, uses or carries a deadly or dangerous weapon. For purposes of 18 U.S.C. § 1752, a restricted building includes a posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting; or any building or grounds so restricted in conjunction with an event designated as a special event of national significance.

f. 40 U.S.C. §§ 5104(e)(2)(D) and (F), which make it a crime to willfully and knowingly "engage in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the

orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress"; and "engage in an act of physical violence in the Grounds or any of the Capitol Buildings."

25. As such, I respectfully request that the court issue an arrest warrant for JONES. The statements above are true and accurate to the best of my knowledge and belief.

_____
SPECIAL AGENT JAVIER A. GONZALEZ
FEDERAL BUREAU OF INVESTIGATION

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this 15th day of January, 2021.

_____
THE HONORABE ZIA M. FARUQUI
U.S. MAGISTRATE JUDGE