## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| | : | |
| **UNITED STATES OF AMERICA** | : | **Case No.: 21-cr-213 RJL** |
| | : | |
| **v.** | : | |
| | : | |
| **CHAD JONES,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

## <u>GOVERNMENT'S TRIAL BRIEF</u>

The United States of America respectfully submits this trial brief in advance of the July 17, 2023, trial scheduled before this Court in this case. The brief is divided below into a summary of the charges and elements (including relevant stipulations); a summary of the anticipated government witness testimony; and a discussion of certain evidentiary or other legal issues anticipated to arise.

### Charges and Elements

Jones is charged in a nine-count indictment to six felony counts and three misdemeanor counts. As previously mentioned however, the government will not be pursuing the felony in count two, and instead will only be seeking a misdemeanor violation of 18 U.S.C. § 1361. In the remaining five felony counts, the government must establish the following elements beyond a reasonable doubt at trial:

### Count One: Civil Disorder

Count one charges the defendant with obstructing law enforcement officers during a civil disorder, which is a violation of federal law.

In order to find the defendant guilty of this offense, this Court must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant knowingly committed an act with the intended purpose of obstructing, impeding, or interfering with one or more law enforcement officers.

Second, at the time of the defendant's act, the law enforcement officer was engaged in the lawful performance of his or her duties incident to and during a civil disorder.

Third, the civil disorder in any way or degree obstructed, delayed, or adversely affected commerce or the conduct or performance of any federally protected function. The parties have stipulated: "The events on the Grounds of the U.S. Capitol and in the U.S. Capitol building on January 6, 2021, obstructed, delayed, or adversely affected commerce . . . ." *See* proposed exhibit 1001. Also, the parties have stipulated: "Some of the events on the Grounds of the U.S. Capitol and in the U.S. Capitol building on January 6, 2021, may have adversely affected a 'federally protected function'. . . ." *See* proposed exhibit 1002.

The term "civil disorder" means any public disturbance involving acts of violence by groups of three or more persons, which (a) causes an immediate danger of injury to another individual, (b) causes an immediate danger off damage to another individual's property, (c) results in injury to another individual, or (d) results in damage to another individual's property.

### Count Three: Obstruction of an Official Proceeding

Count three charges the defendant with corruptly obstructing an official proceeding, which is a violation of federal law. Count three also charges the defendant with aiding and abetting others to commit that offense.

In order to find the defendant guilty of this offense, this Court must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant attempted to or did obstruct or impede and official proceeding. The parties have stipulated: "On January 6, 2021, a joint session of the United States Congress convened at the U.S. Capitol." *See* proposed exhibit 1000.

Second, the defendant intended to obstruct or impede the official proceeding.

Third, the defendant acted knowingly, with awareness that the natural and probable effect of his conduct would be to obstruct or impede the official proceeding.

Fourth, the defendant acted corruptly. To act "corruptly," the defendant must use independently unlawful means or act with an unlawful purpose, or both. The defendant must also act with "consciousness of wrongdoing." "Consciousness of wrongdoing" means with an understanding or awareness that what the person is doing is wrong or unlawful.

Not all attempts to obstruct or impede an official proceeding involve acting corruptly. For example, a witness in a court proceeding may refuse to testify by invoking his or her constitutional privilege against self-incrimination, thereby obstructing or impeding the proceeding, but that person does not act corruptly. In addition, the First Amendment to the United States Constitution affords people the right to speak, assemble, and petition the Government for grievances. Accordingly, an individual who does no more than lawfully exercise those rights does not act corruptly. In contract, an individual who obstructs or impedes a court proceeding by bribing a witness to refuse to testify in that proceeding, or by engaging in other independently unlawful conduct, does act corruptly.

While the defendant must act with intent to obstruct the official proceeding, this need not be his sole purpose. A defendant's unlawful intent to obstruct an official proceeding is not negated by the simultaneous presence of another purpose for his conduct.

**Count Four: Entering or Remaining in a Restricted Building with a Deadly or Dangerous Weapon**

Count four charges the defendant with entering or remaining in a restricted building or grounds with a deadly or dangerous weapon, which is a violation of federal law.

In order to find the defendant guilty of this offense, this Court must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant entered or remained in a restricted building or grounds without lawful authority to do so. The parties have stipulated: "Chad Jones is depicted entering the Capitol at 2:34 p.m. through the Upper West Terrace Door in Exhibit 401 and leaving the Capitol at 2:57 p.m. through the Upper House Door in exhibit 412." *See* proposed exhibit 1009.

Second, the defendant did so knowingly.

Third, the defendant knowingly used or carried a deadly or dangerous weapon during and in relation to the offense.

The term "restricted building or grounds" means any posted, cordoned off, or otherwise restricted area of a building or grounds where a person protected by the Secret Service is or will be temporarily visiting.

The term "person protected by the Secret Service" includes the Vice President.

An object may be considered a "deadly or dangerous weapon" for one of two reasons. First, an object is a deadly or dangerous weapon if it is inherently or obviously dangerous or deadly. Second, an object is a deadly or dangerous weapon if the object is capable of causing serious bodily injury or death to another person and the defendant carried it with the intent that it be used in a manner capable of causing serious bodily injury or death. The defendant need not have actually used the object in that manner.

4

In the indictment, the government has alleged the deadly or dangerous weapon to be a flagpole.

### Count Five: Disorderly or Disruptive Conduct in a Restricted Building with a Deadly or Dangerous Weapon

Count five charges the defendant with disorderly or disruptive conduct in a restricted building or grounds with a deadly or dangerous weapon, which is a violation of federal law.

In order to find the defendant guilty of this offense, this Court must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds. The parties have stipulated: "Chad Jones is depicted entering the Capitol at 2:34 p.m. through the Upper West Terrace Door in Exhibit 401 and leaving the Capitol at 2:57 p.m. through the Upper House Door in exhibit 412." *See* proposed exhibit 1009.

Second, the defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions. The parties have stipulated: "On January 6, 2021, a joint session of the United States Congress convened at the U.S. Capitol." *See* proposed exhibit 1000.

Third, the defendant's conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions. The parties have stipulated: "At approximately 2:12 p.m. . . . Senators evacuated the Senate chamber. The Senate was in recess until 8:06 p.m." *See* proposed exhibit 1000. Further, "[t]he House recessed from 2:29 p.m. to 9:02 p.m." *Id*.

Fourth, the defendant knowingly used or carried a deadly or dangerous weapon during and in relation to the offense.

**Count Six: Engaging in Physical Violence in a Restricted Building with a Deadly or Dangerous Weapon**

Count six charges the defendant with engaging in physical violence in a restricted building or grounds with a deadly or dangerous weapon, which is a violation of federal law.

In order to find the defendant guilty of this offense, this Court must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant engaged in an act of physical violence against a person or property in, or in proximity to, a restricted building or grounds. The parties have stipulated: "Chad Jones is depicted entering the Capitol at 2:34 p.m. through the Upper West Terrace Door in Exhibit 401 and leaving the Capitol at 2:57 p.m. through the Upper House Door in exhibit 412." *See* proposed exhibit 1009.

Second, the defendant did so knowingly.

Third, the defendant knowingly used or carried a deadly or dangerous weapon during and in relation to the offense.

The term "act of physical violence" means any act involving an assault or other infliction of bodily harm on an individual; or damage to, or destruction of, real or personal property.

**Count Seven: Disorderly Conduct in a Capitol Building**

Count seven charges the defendant with the misdemeanor violation of disorderly conduct in a Capitol building, which is a violation of federal law.

In order to find the defendant guilty of this offense, this Court must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant engaged in disorderly or disruptive conduct in any of the United States Capitol Buildings. The parties have stipulated: "Chad Jones is depicted entering the Capitol at 2:34

6

p.m. through the Upper West Terrace Door in Exhibit 401 and leaving the Capitol at 2:57 p.m. through the Upper House Door in exhibit 412." *See* proposed exhibit 1009.

Second, the defendant did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either house of Congress. The parties have stipulated: "On January 6, 2021, a joint session of the United States Congress convened at the U.S. Capitol." *See* proposed exhibit 1000.

Third, the defendant acted willfully and knowingly.

### Count Eight: Act of Physical Violence in the Capitol Building

Count eight charges the defendant with an act of physical violence in the Capitol Building, which is a violation of federal law.

In order to find the defendant guilty of this offense, this Court must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant engaged in an act of physical violence within the Capitol Building. The parties have stipulated: "Chad Jones is depicted entering the Capitol at 2:34 p.m. through the Upper West Terrace Door in Exhibit 401 and leaving the Capitol at 2:57 p.m. through the Upper House Door in exhibit 412." *See* proposed exhibit 1009.

Second, the defendant acted willfully and knowingly.

### Count Nine: Parading, Demonstrating, or Picketing in a Capitol Building

Count nine charges the defendant with parading, demonstrating, or picketing in a Capitol Building, which is a violation of federal law.

In order to find the defendant guilty of this offense, this Court must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant paraded, demonstrated, or picketed in any of the United States Capitol Buildings. The parties have stipulated: "Chad Jones is depicted entering the Capitol at 2:34 p.m. through the Upper West Terrace Door in Exhibit 401 and leaving the Capitol at 2:57 p.m. through the Upper House Door in exhibit 412." *See* proposed exhibit 1009.

Second, the defendant acted willfully and knowingly.

The terms "parade" and "picket" have their ordinary meanings. The term "demonstrate" refers to conduct that would disrupt the orderly business of Congress by, for example, impeding or obstructing passageways, hearings, or meetings, but does not include activities such as quiet praying.

### Count Two: Destruction of Government Property

Although the superseding indictment charges the defendant with a felony violation of 18 U.S.C. § 1361, the United States, at trial, will only be seeking conviction of a misdemeanor violation of 18 U.S.C. § 1361.

In order to find the defendant guilty of the misdemeanor violation, this Court must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant injured, damaged, or destroyed property. The parties have stipulated: "Chad Jones is depicted entering the Capitol at 2:34 p.m. through the Upper West Terrace Door in Exhibit 401 and leaving the Capitol at 2:57 p.m. through the Upper House Door in exhibit 412." *See* proposed exhibit 1009.

Second, the defendant did so willfully.

Third, the property involved was property of the United States, or of any department or agency thereof; however, the government does not need to prove that the defendant knew that the property belonged to the United States.

**Summary of Government Witness Testimony/Evidence**

The Government intends to call the following witnesses, and seek admission of the following exhibits, to provide evidence to find beyond a reasonable doubt that the defendant committed the charged offenses. But, through stipulation, the parties have agreed:

1. "[O]fficers from the Washington, D.C., Metropolitan Police Department (MPD) on the U.S. Capitol Grounds and in the U.S. Capitol building were assisting officers from the USCP who were engaged in their official duties as officers or employee of the United States . . .." Proposed exhibit 1003.
2. "The United States Capitol Police (USCP) operated and maintain closed-circuit video monitoring and recording equipment that . . . [captured] a fair and accurate depiction of the events at the U.S. Capitol on January 6, 2021 . . .. The video footage is authentic in that it is what it purports to be." Proposed exhibit 1004.
3. "Individuals attending the events at the Capitol used personal cameras to capture the events on January 6, 2021. . . . The video footage is authentic in that it is what it purports to be." Proposed exhibit 1005.
4. "Information was seized from Facebook, Inc., and certified as authentic . . .." Proposed exhibit 1006.
5. Information was seized from Apple, Inc., and certified as authentic . . .." Proposed exhibit 1007.
6. Chad Jones's cell phone was seized and data was collected from it. . . . Data presented from the cell phone is authentic." Proposed exhibit 1008.

The admission of identified pieces of evidence is the subject of the pretrial conference set for July 7, 2023.

**United States Secret Service Inspector Lanelle Hawa** will provide overview testimony regarding the restricted area in place at the United States Capitol on January 6, 2021. Inspector Hawa will likely testify that her role within the Liaison Division required her to coordinate visits of Secret Service protectees to the United States Capitol. Specifically for January 6, 2021, that included her work coordinating the visit of then-Vice President Michael Pence.

Inspector Hawa will also provide testimony regarding proposed exhibits 300, 301, and 302. In exhibit 300, Inspector Hawa will likely testify that then-Vice President Michael Pence was in the Capitol on January 6, 2021 and was moved to a secure location following the breach of the building.



*Figure 1*: Screengrab of proposed exhibit 300. Inspector Hawa circled in yellow. Then-Vice President Michael Pence circled in Red.

Inspector Hawa finally will provide testimony of generally where then-Vice President Pence was during the riot, and when he returned to preside over the joint session of Congress. She will outline that at all times during the day, then-Vice President Pence was within the secure perimeter around the grounds of the Capitol.

**United States Capitol Police Lieutenant Maria Willis** will provide overview testimony regarding the events at the United States Capitol on January 6, 2021. The parties have been unable to reach agreement on the events at the Capitol being a "civil disorder." As outlined above, the term "civil disorder" means any public disturbance involving acts of violence by groups of three

or more persons, which (a) causes an immediate danger of injury to another individual, (b) causes an immediate danger off damage to another individual's property, (c) results in injury to another individual, or (d) results in damage to another individual's property.

Lieutenant Willis, from her vantage point within the United States Capitol Police's Command Center, was working on January 6, 2021 as the executive officer for the Office of the Assistant Chief. Lt. Willis will provide the Court with an overview of the events that occurred at the Capitol, as well as more specific view of the defendant's actions captured on United States Capitol Police Surveillance.



*Figure 2*: The parties have stipulated: "Chad Jones is depicted entering the Capitol at 2:34 p.m. through the Upper West Terrace Door in Exhibit 401 and leaving the Capitol at 2:57 p.m. through the Upper House Door in exhibit 412." See proposed exhibit 1009.

Lieutenant Willis, using United States Capitol Police Surveillance, will provide testimony of the path used by the defendant while he was within the Capitol Building. The defendant's path through the Capitol will be shown as:



*Figure 3*: Path taken by the defendant depicted in red

Lieutenant Willis will also provide testimony laying the foundation for the admission of the numerous open-source videos depicting what the defendant was doing while inside the Capitol Building.

**United States Capitol Police Officer Kyle Yetter** will provide testimony related to the events occurring immediately outside the Speaker's Lobby Door.



*Figure 4*: Screengrab from proposed exhibit 605. The defendant is circled in red. USCP Off. Kyle Yetter is circled in yellow.

Officer Yetter will likely testify that he was positioned in front of the Speaker's Lobby Door as a group of rioters approached. As their numbers increased, a different unit of the Capitol Police was going to take his place. During the transition to officers in body armor to guard the door, the defendant began smashing out the window to the barricaded door.

Officer Yetter will likely testify that members of the House of Representatives were being evacuated, and that the door stood between the rioters and the members. Officer Yetter will likely testify that his role in preventing rioters from entering the Speaker's Lobby was one of his lawful duties, and that the group of individuals attempting to make their way through that door were directly interfering with his duties at the door.

**United States Capitol Police Sergeant Adam Junior** will provide testimony to the events occurring immediately after the defendant entered the Capitol. Sergeant Junior will likely testify that after officers were overrun in the Crypt, he took a position inside the Upper West Terrace Door.



*Figure 5*: Screengrab from proposed exhibit 601. Sgt. Junior is circled in yellow.

Sergeant Junior will likely testify that he did not provide anyone permission to enter the United States Capitol on January 6, 2021.

**Special Agent Javier Gonzalez** will outline the investigation into the defendant's actions at the Capitol on January 6, 2021. Agent Gonzalez will likely testify that as the case agent for this investigation, he searched the contents of the defendant's phone, iCloud, and Facebook. Also,

through stipulation, he will provide the context for when the defendant was interviewed by agents with the FBI, and the search of the defendant's home.



*Figure 6*: Screengrab from proposed exhibit 804A4.

Agent Gonzalez will outline conversations the defendant had with other individuals prior to January 6, 2021. Within proposed exhibit 513, the defendant states: "I've been here since 6:40. There are so many people." He further states: "I was just in the capitol and they shot a girl beside me. Just letting you know. My phone is about to die." Within proposed exhibit 514, the defendant is asked whether he entered the Capitol, and he responds: "Nahhh. From what I'm seeing on tv, A bunch of people did though." The defendant is then confronted with a news clip depicting him breaking the window at the Speaker's Lobby Door. The defendant does not respond until January 8th, even after receiving numerous follow-up messages.

Within proposed exhibit 516, the defendant will tell a friend that he was "beat by some batons." But also, the defendant received a message at 2:39 local time that reads: "They just came on the radio and said they had to stop the debate y'all have disrupted it LOL." Agent Gonzalez will also provide context to the "legacy" photos found on the defendant's phone as seen in proposed exhibit 521.

Agent Gonzalez will also provide testimony regarding the search of the defendant's home and vehicle and the items seized. He will likely testify that the red jacket worn by the defendant on January 6, 2021, was found on the driver's side rear passenger floor.



*Figure 7*: Proposed exhibit 811

Agent Gonzalez will provide the testimony to give this Court insight into what was the defendant's intent during his actions at the Capitol on January 6, 2021, through conversations the defendant had before January 6, his actions on January 6, 2021, and finally through his actions after January 6, 2021.

**Anticipated Legal Issues**

Through consultation with opposing counsel, and extensive discussions regarding the trial and possible resolutions short of trial, the Government believes the two overarching legal issues that will be presented to this Court during trial will be: (1) the level of premeditation required for

an individual to violate 18 U.S.C. § 1512(c)(2), Obstruction of an Official Proceeding; and (2) the timing of the corrupt acts committed relative to the official proceeding. Further, the Court also foresaw an issue related to the counts related to the deadly or dangerous weapon carried by the defendant.

**Level of Planning Required**

The specific intent required to violate 18 U.S.C. § 1512(c)(2) is—while committing the actus reus—that an individual intended to obstruct, or impede, the official proceeding. Although this intent must be present at the time the crime is committed, the actus reus does not occur until an act is done *corruptly*. This "timing issue" gets missed because there are also *lawful* ways to impede official proceedings and evidence of having that specific intent during *lawful* ways to impede provides evidence of the specific intent during *unlawful* ways to impede.

The government's case does not require the defendant to have intended to break into the Capitol when he made plans to travel to D.C. for the rally at the ellipse to prove that he was in violation of 18 U.S.C. § 1512(c)(2). But having the intent to affect the election during his planning makes it more likely that the defendant had the same specific intent when he then acted corruptly upon that intent.

As will be outlined at trial, the official proceeding—the certification of the electoral college vote—was impeded because the defendant wanted to stop that proceeding "to have somebody think 'hey, maybe there's another side to this . . ..'" Proposed Exhibit 804A5. Although this mens rea is present throughout the entire day of January 6, 2021, acting corruptly upon that intent is the wrong Congress sought to criminalize.

The defendant acted corruptly when he moved past barriers to keep him off the Capitol grounds; he threw objects at a line of officers; he ran into the Upper West Terrace Door; he pushed

his way through crowds of other rioters to get to the front; he broke through the window on the Speaker's Lobby Door; and he attempted to stay inside the Capitol during a push to get rioters out. The defendant sought to interfere/impede the certification of the electoral college vote and acted corruptly in his attempt to achieve that goal.

The government need not show that the defendant intended to commit his criminal acts before he committed them. Just that he intended a particular result, and corruptly acted to obtain that result.

### Timing of Obstruction

The parties have stipulated that each house of Congress recessed prior to the defendant entering the building and returned after the defendant had already been pushed out of the building. But the issue at trial is not whether Congress was *in recess* during the defendant's corrupt acts; the issue is whether Congress could *return from recess* during the defendant's corrupt acts. Congress could not return from recess while the defendant was unlawfully trespassing within the Capitol.

For as long as Congress was in recess, Congress was not fulfilling its Constitutionally required duty of certifying the 2020 Presidential election. At trial, the government will present evidence that the recess was required to ensure the safety of the Senate and members of the House of Representatives. Also, that this recess was required to last until each rioter was removed from the building, including the defendant, Chad Jones.

### Deadly or Dangerous Weapon

Counts four, five, and six, charging violations of 18 U.S.C. § 1752(a), have as one element that the defendant used or carried a "deadly or dangerous weapon." The statute does not define the term "deadly or dangerous weapon," but the Court of Appeals for the D.C. Circuit has defined the term in the context of 18 U.S.C. § 111(b). "For an object that is not inherently deadly [such as a

gun], . . . the object must be capable of causing serious bodily injury or death to another person and the defendant must use it in that manner." *United States v Arrington*, 309 F.3d 40, 45 (D.C. Cir. 2002). Unlikely to be in dispute at trial, the defendant swung a wooden dowel with both hands into a glass window of the Speaker's House Lobby door.

As noted in *United States v Robertson*, 610 F.Supp.3d 229 (D.D.C. 2022) (Cooper J.):

> Consider a pen, for example. It cannot be criminal to simply carry a pen. But a fact finder's assessment may change if there were evidence that a defendant tightly gripped a pen in his hand, raised to his chest, with its tip facing out toward an approaching officer. Even if the defendant never used the pen to jab at the officer, a jury may find that he carried the pen with the intent to use it in a manner capable of causing serious injury.

*Robertson* at 238.

At trial, the government will provide video evidence of the defendant using the deadly or dangerous weapon in a manner capable of causing serious bodily injury or death to an individual.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

Date: July 2, 2023          /s/ *Adam M. Dreher*
ADAM M. DREHER
Assistant United States Attorney
MI Bar No. P79246
601 D. St. N.W.
Washington, D.C. 20530
(202) 252-1706
adam.dreher@usdoj.gov

SONIA W. MURPHY
Trial Attorney
D.C. Bar No. 483072
(202) 305-3067
sonia.murphy@usdoj.gov